STATE v. SAMUEL B. PEARSON.

*Illegal Voting—Pardon.*

1. The decision of the judges of election that a person is entitled to vote, is a complete defence to an indictment for illegal voting, although such person may not in fact be entitled to vote.

2. *Quœre*, whether a pardon will restore the right to vote to one who has been convicted of an infamous crime.

(*State* v. *Boyett*, 10 Ired., 336; *State* v. *Hart*, 6 Jones, 389; cited and distinguished).

INDICTMENT, tried before *Graves, Judge,* and a jury, at March Term, 1886, of BURKE Superior Court.

The defendant is indicted under the statute (*The Code,* §2709), for having unlawfully voted at the general election in November, 1884.

He pleaded not guilty, and the jury rendered a special verdict, from which it appears, that at Spring Term, 1882, of the Superior Court of the county of Burke, he was convicted of the crime of manslaughter—that at the time of the conviction he was only nineteen years of age—that subsequently, and before he attained his majority, the Governor pardoned him for this offence, he having been sentenced to ten years' imprisonment in the penitentiary; that after he came of age, and shortly before the general election for Governor, President and other officers, in 1884, he had himself registered as a voter in Silver Creek township, in the county

mentioned above; that on the Saturday next preceding this election, when the registrar and judges of the election had assembled, as required by the statute (*The Code*, §2677), to afford opportunity to those who wished to do so, to challenge voters, he was notified that on the registration book his name was marked "challenged;" that he appeared at once and told the judges "that if he had the right to vote, he wanted to vote, but if they decided he had not a right to vote, he would not vote, as they were the ones to decide it;" that on the day of the election he appeared at the polling-place, and handed his ballot to the judges of the election; one of them called out his name and said, "registered and voted," and his ballot was deposited in the ballot-box, and there was no challenge of his vote at that time.

The Court being of opinion that upon the facts found by the special verdict he was not guilty, a verdict to that effect was entered, and thereupon there was judgment that the defendant be discharged, and go without day, from which the State appealed to this Court.

*The Attorney-General*, for the State.
No counsel for the defendant.

MERRIMON, J., (after stating the facts). The findings of the facts by the special verdict in some respects are not as definite and satisfactory as they should be; but we think that it sufficiently appears, that there was no question of the defendant's right to vote, except upon the ground that he had been convicted of the crime of manslaughter. As to that, he had been pardoned by the Governor. His right to vote had been challenged. He at once appeared before the registrar and judges of the election, at the time and place as required by law, and frankly submitted to them the question of his right to vote, saying as he did so, if he "had the right to vote, he wanted to vote, but if they decided he had not a

right to vote, he would not vote, as they were the ones to decide." It was the duty of the registrar and judges to hear and decide the question thus submitted. It does not appear affirmatively that they did deliver any formal decision and enter the same in a book or on paper—this was not necessary—it was sufficient if they decided. Their proceedings were summary and informal. The presumption is, they did decide. The registrar did not erase his name from the books, as he was required to do, if the challenge was sustained. The defendant was afterwards allowed to vote without question or further challenge, the same judges receiving his vote, and the registrar being present. It was their duty to challenge his vote on the day of election, if they had reason to believe or suspect that he was not qualified.

So that we think it sufficiently appears that the registrar and judges of election did decide that he had the right to vote.

This decision, however erroneous, if honestly made, and so acted upon by the defendant, gave him the right to vote in contemplation of the statute making it criminal to vote illegally, although the rightfulness of his vote might afterwards be questioned in any proper civil action or proceeding. While the decisions of the registrar and judges of election in respect to the qualifications of electors, are very important, and should be made upon vigilant inquiry, care, scrutiny and deliberation, they are not final and conclusive. They are intended to facilitate the right of the elector entitled to vote, and secure an honest and just election, subject to the authority of any proper jurisdiction, to inquire into and decide upon the lawfulness of any vote, or any number of votes given. But their decision in favor of the right of a party to vote, in the absence of fraud and collusion, must have the effect of securing the voter immunity from criminal liability, if it should afterwards appear that he did not have the right to vote. It would be unjust and monstrous to establish a

tribunal, charged with jurisdictional functions to decide questions that might arise as to the right of one claiming the right to vote at an election, and in case of a decision in his favor. and he voted, to make him amenable criminally and subject to prosecution! The statute does not so provide.

It is not alleged or suggested that the registrar and judges of election and the defendant acted in bad faith in this case, and the former having decided that the defendant had the right to vote as he did, he was not guilty of the offence charged against him.

This renders it unnecessary for us to decide upon the legal effect of the pardon mentioned in respect to the defendant's eligibility as an elector, and we express no opinion in that respect.

This case is unlike the cases of *State* v. *Boyett*, 10 Ired., 336, and *State* v. *Hart*, 6 Jones, 389. In theses cases, the judges of election did not decide in favor of the right of the parties respectively to vote or at all—they voted in the absence of any decision. The learned Judges who delivered the opinions of the Court in them, said, however, that if there had been a decision in favor of the right to vote, the defendants would not have been guilty.

There is no error. Let this opinion be certified to the Superior Court according to law. It is so ordered.

No error. Affirmed.